# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHARLES LINCOLN HUNLEY,<br><br>　　　　　Defendant. | Case No. 3:21-cr-00047-SLG |

## ORDER REGARDING MOTION TO SUPPRESS

Before the Court at Docket 24 is defendant Charles Lincoln Hunley's Motion to Suppress Evidence. Mr. Hunley filed a memorandum in support of his motion at Docket 25. The government responded in opposition at Docket 31. Mr. Hunley filed a reply at Docket 32. Because Mr. Hunley did not seek leave of the Court to file a reply, the Court will not consider the reply.[1] Neither party requested an evidentiary hearing or oral argument; neither were necessary to the Court's decision.

Mr. Hunley "seeks to suppress evidence of the firearm and hypodermic needle seized because of an unlawful search by law enforcement personnel of his

---

[1] D. Ak. Local Criminal Rule 47.1(d). Even if the Court had considered the reply filed by Mr. Hunley, it would not change the Court's decision. In his reply, Mr. Hunley asserts that he and the driver of the sedan demonstrated that they did not feel free to leave because they did not drive off in the sedan. Docket 32 at 2. This argument is contradicted by the driver telling Officer Piscoya that the sedan was not operable and had been towed to the location. Docket 24-2 at 3.

person and possessions."[2] Specifically, Mr. Hunley asserts that police did not have reasonable suspicion to make a *Terry* stop of him and that the police did not have reasonable suspicion to extend the scope of the stop to investigate whether there were any outstanding warrants for him.[3] The government responds that the police did not stop or detain Mr. Hunley when they approached and asked him to identify himself, that the search of his person was a lawful search incident to arrest, and that the search of his backpack was a lawful parole search.[4]

I. Background

At approximately 4 a.m. on July 16, 2020, Anchorage Police Department officers responded to a phone call about a suspicious car. The car that most closely, but not exactly, matched the caller's description was a sedan parked on a public street.[5] Officer Piscoya was the first officer on scene and drove past the car while waiting for another officer to arrive. Officer Piscoya then turned around, got out of his car, and contacted the driver of the sedan, who had gotten out of the

---

[2] Docket 24 at 2.

[3] Docket 25 at 5, 11.

[4] Docket 31.

[5] The caller described a white sedan; the car that police located was a gold sedan. Docket 24-2 at 3; Docket 31-1 at 1.

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 2 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 2 of 9

sedan and began to walk away from it. The driver told Officer Piscoya that the sedan was not running, and he had it towed to that location.[6]

While Officer Piscoya was speaking to the driver, Mr. Hunley got out of the back seat of the sedan, went to the bushes nearby, and grabbed a bicycle. Officer Piscoya approached Mr. Hunley to pick up and return an electronic tablet that Mr. Hunley had dropped. When Officer Piscoya returned the tablet, Mr. Hunley was "verbally hostile" and gave his name and a false date of birth.[7] As police dispatch were running the name and birthday, Officer Duque arrived on scene, and Mr. Hunley rode away on the bicycle. Dispatch then indicated that there was no person that matched the name and date of birth, and Officer Duque began to follow Mr. Hunley. Officer Piscoya ran another search and found a Charles Hunley V, with a different date of birth, whose description matched Mr. Hunley and who had an outstanding felony parole warrant.[8]

Officer Piscoya located Mr. Hunley riding the bicycle and turned on his overhead lights, but Mr. Hunley did not stop. Officer Duque also turned on his overhead lights and pulled in front of Mr. Hunley. Officer Piscoya handcuffed Mr.

---

[6] Docket 24-2 at 3.

[7] Docket 24-2 at 3. It is unclear from the parties' briefing and the police reports whether Officer Piscoya asked for Mr. Hunley's name and date of birth or if Mr. Hunley volunteered the information. For the purposes of deciding the instant motion, the Court assumes Officer Piscoya asked Mr. Hunley to identify himself.

[8] Docket 24-2 at 3.

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 3 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 3 of 9

Hunley and patted him down; he located a hypodermic needle and pocketknife in Mr. Hunley's pants pocket.[9]

Officer Piscoya called the Alaska state probation office and was directed to search Mr. Hunley's backpack for drugs, drug paraphernalia, and stolen items. In the backpack, the officers found a loaded Glock pistol and additional ammunition.[10] Mr. Hunley's conditions of parole require him to submit to a search of his person and personal property for drugs, drug paraphernalia, and stolen property, at the direction of a probation officer.[11]

## II. Applicable law

This case turns on whether the initial encounter between police and Mr. Hunley was a stop or seizure that was required to be supported by reasonable suspicion.[12] Mr. Hunley asserts that Officer Piscoya performed a *Terry* stop when he asked Mr. Hunley for his name and date of birth, but that the stop was not supported by reasonable suspicion because the report of the suspicious car did not provide the necessary indicia of reliability.[13] However, the reliability of the call is only relevant if Mr. Hunley in fact was stopped when Officer Piscoya asked him

---

[9] Docket 24-2 at 3.

[10] Docket 24-2 at 4.

[11] Docket 24-1 at 3, ¶¶ 25, 26.

[12] Mr. Hunley does not contend that the search of his person or his backpack were illegal separate from the legality of the stop.

[13] Docket 25 at 5–6.

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 4 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 4 of 9

for his name and date of birth. Whether the stop was unlawfully extended also turns on whether Mr. Hunley was stopped at that point. The government maintains that Mr. Hunley "was not detained during this initial contact."[14]

"The Supreme Court has held that 'a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.'"[15] Police questions "relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."[16] No stop or seizure "occurs when a law enforcement officer merely identifies himself and poses questions to a person if the person is willing to listen. This is true whether an officer approaches a person who is on foot or a person who is in a car parked in a public place."[17]

### III. Analysis

Here, during the initial, brief encounter outside of the sedan, the officers used no physical force and made no show of authority that restrained Mr. Hunley's liberty to cycle away from them. For most of the initial encounter, only one officer

---

[14] Docket 31 at 4.

[15] *United States v. Brown*, 996 F.3d 998, 1005 (9th Cir. 2021) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

[16] *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984) (citing *Florida v. Royer*, 460 U.S. 491 (1983)).

[17] *United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) (internal citations omitted).

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 5 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 5 of 9

was present, Officer Piscoya. Once Mr. Hunley gave Officer Piscoya his name and a false date of birth, the officer did nothing to physically detain Mr. Hunley.[18] Even after the second officer arrived, the police conduct here would not have "communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."[19] In fact, as Mr. Hunley himself contends, he "assum[ed] he was free to leave, having not been told otherwise by the officers" and indeed freely cycled away from the officers.[20] There is no evidence in the record that either of the officers brandished a weapon, parked their patrol cars in a manner that would have blocked the sedan (if the sedan was even operable), or that they turned on their lights or sirens during the initial encounter.[21]

Although Officer Duque began to look for Mr. Hunley after he cycled away, this did not occur until after the officers learned that he had given a false date of birth, and the officers were unable to relocate Mr. Hunley on the bicycle until after

---

[18] *Cf. Brown v. Texas*, 443 U.S. 47, 52 (1979) (holding that the Fourth Amendment was violated when police, without reasonable suspicion, physically detained the defendant to determine his identity after the defendant refused to identify himself).

[19] *Bostick*, 501 U.S. at 439.

[20] Docket 25 at 3.

[21] *See United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) (holding no seizure occurred when the officer did not block defendant's car, did not activate sirens or lights, approached defendant's car on foot, and did not brandish a weapon); *United States v. Kim*, 25 F.3d 1426, 1430–31 (9th Cir. 1994) (holding that officer's initial encounter with Kim, who was seated in his lawfully parked car, was not a seizure or investigatory stop because the officer parked his police car partially blocking Kim's car, approached Kim's car on foot, and asked for and received permission to question Kim).

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 6 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 6 of 9

they learned of the arrest warrant. Considering the totality of the circumstances, the brief initial police encounter with Mr. Hunley by the sedan was consensual and did not require reasonable suspicion. By the time the officers stopped Mr. Hunley on the bicycle, they had reasonable suspicion for the stop based on the outstanding warrant.

The recent Ninth Circuit case *United States v. Brown* is instructive. In *Brown*, two officers responded in the middle of the day to a call from a motel that there were two transients in the motel parking lot. The officers drove into the parking lot where the defendant and another man were sitting near a U-Haul van; the other man "fit the general description of one of the individuals provided in the radio call."[22] The officers got out of their car and began speaking to the men, telling them about the call from the motel, asking what room they were staying in and asking for their identifications.[23] Brown stated that his identification was in the motel. The officers then asked if they men were making a drug deal and stated that drug deals were not uncommon in that area. When the men denied a drug deal, the officers asked Brown for his name, date of birth, height, and weight, and radioed Brown's answers in to check for warrants.[24] The officers also asked the men if they had any warrants. When Brown's cell phone rang, he answered it and

---

[22] 996 F.3d 998, 1002 (9th Cir. 2021).

[23] *Id.*

[24] *Id.* at 1003.

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 7 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 7 of 9

held a "casual conversation." When the call was over, the officers asked the men about a gold watch and a Leatherman tool the men had. When Brown began to reach into his pocket, one of the officers ordered him to stand up and turn around, then held Brown's hands behind his back.[25] At that point, the encounter had lasted approximately seven minutes.[26] The Ninth Circuit held that the encounter between the officers and Brown "was consensual until the point at which Officer Wining ordered Brown to stand up and turn around. At that point, Wining had seized Brown."[27]

Here, Officer Piscoya's initial actions were even less intrusive than those of the officers in *Brown*. The encounter likely lasted less than seven minutes, and although the encounter occurred at 4 a.m., it was in July when it is relatively light out at that time of day in Alaska, as shown in the video of the encounter.[28] Officer Piscoya merely handed Mr. Hunley's dropped tablet back to him and asked him his name and date of birth. He did not accuse Mr. Hunley or the sedan's driver of

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 1004–05; *accord id.* at 1006 ("Considering the totality of the circumstances, we conclude that, up to the point at which Wining issued a command to Brown to stand up and turn around, a reasonable innocent person in Brown's situation would have felt free to terminate the encounter.").

[28] Def. Exhibit C (video).

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 8 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 8 of 9

criminal activity, did not ask them if they had warrants, and did not question them about their possessions.

The Court finds that Mr. Hunley was not stopped or seized by police prior to the officers having reasonable suspicion that there was an outstanding felony warrant for his arrest. Because Mr. Hunley was not stopped when asked for his name and date of birth, Officer Piscoya did not unlawfully extend a stop in order to conduct the warrant checks.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that the motion to suppress at Docket 24 is DENIED.

DATED this 11th day of January, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:21-cr-00047-SLG, *United States v. Hunley*
Order Re Motion to Suppress
Page 9 of 9
Case 3:21-cr-00047-SLG-MMS   Document 34   Filed 01/11/22   Page 9 of 9